<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON HEWITT INC., <br><br>      *Plaintiff,* <br><br> v. <br><br> ACTIVE INCOME TAXES, INC., an Illinois Corporation, and AMEENA IQBAL, <br><br>      *Defendants.* | Civil Action No. 22-cv-02355 <br><br> **OPINION** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

      This case arises out of the parties' franchise agreement for the operation of an income tax preparation business. Plaintiff Jackson Hewitt Inc. ("JHI") brought this action against Active Income Taxes, Inc. ("AITI") and Ameena Iqbal alleging breach of contract and breach of guaranty. Currently pending before the Court is Plaintiff's motion for default judgment against Defendants under Fed. R. Civ. P. 55(b). D.E. 13. Also before the Court is Defendants' cross-motion to vacate the Clerk of the Court's entry of default. D.E. 17. The Court reviewed all submissions[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Plaintiff's motion is **DENIED** and Defendants' cross-motion is **GRANTED**.

---

[1] The submissions consist of Plaintiff's motion for default judgment, D.E. 13 ("Br."); Defendants' opposition and cross-motion to vacate the Clerk of the Court's entry of default, D.E. 17 ("Opp."); and Plaintiff's opposition to the motion to vacate and reply in support of the motion for default judgment, D.E. 20 ("Reply").

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiff filed this action on April 22, 2022, alleging that Defendants are liable for breach of contract and breach of guaranty in connection with a franchise agreement ("Franchise Agreement") between the parties. *See* Compl. JHI and AITI were the parties to the Franchise Agreement, while Iqbal "executed a guaranty pursuant to which she agreed to perform AITI's obligations under the Franchise Agreement." *Id.* ¶¶ 7, 10, 24-25. The Franchise Agreement granted AITI a license to operate an income tax preparation business using JHI marks. *Id.* ¶ 24. The Franchise Agreement included a right for JHI to audit and inspect the books and records of AITI if there was "reason to suspect" wrongdoing and further provided that if Defendants had failed to comply with their obligations under the Franchise Agreement, Defendants would bear the costs of the audit. *Id.* ¶¶ 27-29, 36. The Franchise Agreement also requires Defendants to reimburse JHI for fees that JHI determines should be refunded to customers. *Id.* ¶ 38. In early 2020, JHI "received notice of credible allegations of potential wrongdoing on the part of Defendants" and exercised its right to inspect and audit AITI's books and records. *Id.* ¶¶ 30-31. JHI alleges that this audit substantiated the allegations of wrongdoing. *Id.* ¶ 33. Thus, JHI terminated the Franchise Agreement on July 16, 2020. *Id.* ¶ 33.

JHI alleges that it incurred costs of at least $331,258.37 in connection with the inspection and audit of AITI's books and records. *Id.* ¶ 41. JHI further indicates that it incurred $7,620 in costs associated with customer reimbursements. *Id.* ¶ 43. JHI claims it is owed interest on these sums. *Id.* ¶ 48. In its brief, Plaintiff also seeks compensatory damages of $427,337.10 in "lost

---

[2] The factual background is taken from Plaintiff's Complaint ("Compl"), D.E. 1; the Declaration of Matteo Serritella, the process server (Serritella Decl."), D.E. 20-3; the Declaration of Kevin J. O'Connor, Esq., Plaintiff's counsel ("O'Connor Decl."), D.E. 20-1; and the Affidavit of Ameena Iqbal ("Iqbal Aff."), D.E. 17 Ex. D.

royalties and advertising and marketing fees due to [Defendants'] failures to fully perform under the franchise agreement." Br. at 10. Lastly, JHI seeks a permanent injunction to enforce Defendants' post-termination obligations under the Franchise Agreement. *Id.*

Plaintiff attempted service of the Summons and Complaint on Iqbal, both personally and as the representative of AITI. On May 9, 2022, Plaintiff filed "Return of Service" documents as to both Defendants. D.E. 5; D.E. 6. Both documents claim that the Summons and Complaint were "[s]erved personally upon the defendant" on April 29, 2022 at Iqbal's home address. Nonetheless, Defendants never answered or otherwise responded to the Complaint. As a result, Plaintiff requested a default as to both Defendants, which the Clerk's Office entered. D.E. 7. The motion for default judgment followed. D.E. 13. Defendants, appearing for the first time, filed opposition to the motion in which they contest service and affirmatively move to vacate the entry of default. D.E. 17. Defendants included an affidavit of Iqbal. Iqbal states that she was not at home when service was attempted, that the process server interacted with her nanny, and that she has never been personally served in this case either in her individual capacity or as a representative of AITI. Iqbal Aff. ¶¶ 3-4, 7.

In response, Plaintiff relies on a declaration of Matteo Serritella, the process server. Serritella states that he went to Iqbal's home address and observed an adult woman in the backyard who he "believed to be Iqbal." Serritella Decl. ¶¶ 6-7. Serritella and the woman "locked eyes," and Serritella "said her name and began to approach her, carrying the documents." *Id.* ¶ 7. The woman went inside the home. *Id.* ¶ 8. Serritella declares that he was then able to see the woman through a glass door and "advised the woman through the door while she was in [his] line of sight that [he] was there to serve the summons and complaint." *Id.* ¶ 9. Serritella indicates that he advised that he "would leave the documents by the front door" and "then left the copies of the

summons and complaint for Defendants by the front door." *Id.* ¶¶ 9-10. Plaintiff also relies on a declaration of its counsel, Kevin J. O'Connor, Esq. O'Connor states that he spoke with Defendants' counsel, Richard Grossman, who initially indicated his belief that service was improper because the "process server had allegedly left the Summons and Complaint with Iqbal's mother-in-law, at Iqbal's residence." O'Connor Decl. ¶ 6. According to O'Connor, Grossman indicated that he believed the mother-in-law lived in Iqbal's home. *Id.* ¶ 7.

## II. STANDARD OF REVIEW

The Court may enter a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to granting a default judgment, the court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015) (citing *Chanel*, 558 F. Supp. 2d at 535-36). Additionally, before granting a default judgment, the Court must consider the following three factors: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct.

4

*Id.*; *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006) (citation omitted). Here, the only contested issue is service.[3]

### III.   ANALYSIS

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund of Phila., & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985)). "[D]elivering a copy of the summons and of the complaint to the individual personally" is sufficient to effect service. Fed. R. Civ. P. 4(e)(2)(A). Service may also be made on an individual by "leaving a copy of [the summons and complaint] at the individual's

---

[3] While not raised by the parties, the Court also notes a pleading error as to subject matter jurisdiction. The Complaint alleges that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. To establish jurisdiction under § 1332, "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). For purposes of diversity jurisdiction, "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"—what is commonly referred to as the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). A corporation's "nerve center" is typically its corporate headquarters. *Id.* at 81.

Plaintiff is a Virginia corporation and Defendant AITI is an Illinois corporation. However, Plaintiff has not alleged the principal place of business for either itself or for AITI. *Carolina Cas. Ins. Co. v. Ins. Co. of N. Am.*, 595 F.2d 128, 130 n.1 (3d Cir. 1979) ("[P]laintiffs have failed to state in their complaint the principal place of business of defendant Refrigerated. Thus the jurisdictional allegations in the pleadings are inadequate to establish jurisdiction under 28 U.S.C. § 1332(c)[.]"); *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, No. 15-1961, 2017 WL 436250, at *3 (D.N.J. Jan. 31, 2017) ("[I]n order to establish jurisdiction under Section 1332(c), a corporate plaintiff must plead both its state of incorporation and the location of its principal place of business." (citation omitted)); *Deutsche Bank Nat'l Tr. Co. v. Lindsey*, No. 13-2040, 2013 WL 2404157, at *1 (D.N.J. May 31, 2013) (declining to enter default judgment after finding that the complaint failed "to allege the Plaintiff's principal place of business or its state of incorporation" (citing *Hunt v. Acromed*, 961 F.2d 1079, 1082 n.7 (3d Cir. 1992))). Plaintiff is directed to address this deficiency through an amended pleading or other supplemental filing within thirty days of the entry of the accompanying Order.

dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Additionally, service may be made on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service may be made on a corporation following the same state law standards or by serving an authorized representative. Fed. R. Civ. P. 4(h)(1). Here, the relevant states are New Jersey, where the District Court is located, and Illinois, where service was purportedly made.

"[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). "This burden can be met by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted). Federal, New Jersey, and Illinois law all permit service by leaving a copy of the summons and complaint at a defendant's usual place of abode with a person of suitable discretion who resides there.[4] Fed. R. Civ. P. 4(e)(2)(B); N.J. Ct. R. 4:4-4(a)(1); 735 ILCS 5/2-203.

The dispute here hinges on whether the person with whom the process server interacted lived in Iqbal's home.[5] Plaintiff filed returns of service as to Iqbal individually and as to AITI. D.E. 5, 6. Both documents indicate that the Summons and Complaint were "[s]erved personally upon the defendant." However, in his declaration, the process server indicates only that he went

---

[4] While the age requirements of the three jurisdictions differ, Plaintiff and Defendants appear to agree that the person served was an adult, which is permissible under all three.

[5] The parties also dispute whether leaving the Summons and Complaint outside the front door while the other individual was inside the home constitutes proper service. It appears that leaving a summons and complaint in a defendant's proximity may be sufficient where the defendant actively evades service. *See Action Adjustment Serv., Inc. v. Heenan*, No. 20-2032, 2021 WL 3015412, at *5-7 (E.D. Pa. June 2, 2021). However, because the Court disposes of the matter on another ground, it does not rule on this argument.

to Iqbal's home and interacted with a person who he "believed to be Iqbal" without noting the basis for that belief.[6] Serritella Decl. ¶¶ 7, 11. In her affidavit, Iqbal states that she was never personally served and that the person with whom Serritella interacted was her nanny. Iqbal Aff. ¶¶ 5, 7. Iqbal further states that the attempted service took place when she was not at home. *Id.* ¶ 5. As a result, the Court is unable to conclude who Serritella interacted with or, if it was Iqbal's nanny, whether that individual lives in Iqbal's home. Thus, Plaintiff has not met its burden of establishing proper service by a preponderance of the evidence and the motion for default judgment is denied. Plaintiff may re-serve Defendants within ninety days of the entry of the accompanying Order.

Plaintiff asserts that if service was made on Iqbal's mother-in-law, as Grossman initially claimed, such service would be proper under Illinois law. Reply at 6-7; O'Connor Decl. ¶ 6. The Illinois statute states that service may be made "by leaving a copy [of the summons] at the defendant's usual place of abode, with some person of the family or a person residing there[.]" 735 ILCS 5/2-203. Thus, "a defendant's family member is not required to reside in the defendant's household in order to accept service of process[.]" *Cent. Mortg. Co. v. Kamarauli*, 980 N.E.2d 745, 751 (App. Ct. Ill. 2012). While Plaintiff's counsel, O'Connor, claims that he was initially told by Defendants' counsel that the person who received service was Iqbal's mother-in-law, Defendants now dispute this fact. As a result, O'Connor's declaration is insufficient to establish

---

[6] Plaintiff claims that the two return of service documents are *prima facie* evidence of proper service that Defendants must rebut with "strong and convincing evidence." Reply at 5 (citing *Peralta v. El Tiburon, Inc.*, 252 F. Supp. 3d 658, 661 (N.D. Ill. 2017)). However, the Serritella declaration undermines the force of the returns by claiming only that Serritella "believed" that the woman with whom he interacted was Iqbal, without providing any specific information in support of that belief. Serritella Decl. ¶¶ 7, 11. Such a couched statement, without more, cannot constitute *prima facie* evidence of proper service, particularly where Defendants rebut the claim with a sworn affidavit claiming otherwise. *See* Iqbal Aff.

by a preponderance of the evidence that it was indeed Iqbal's mother-in-law—*i.e.*, a member of her family.

Plaintiff also claims that if service was made on Iqbal's nanny, such service would be proper regardless of whether the nanny lived in Iqbal's home. Br. at 7. Plaintiff relies on the *Kamarauli* court's holding that "a defendant's family member is not required to reside in the defendant's household in order to accept service of process," coupled with a statement earlier in the opinion that "family" includes "the whole body of persons who form one household, thus embracing servants." *Kamarauli*, 980 N.E.2d at 751 (citing *Anchor Finance Corp. v. Miller*, 132 N.E.2d 81, 82 (App. Ct. Ill. 1956)). But nowhere in the Illinois court's opinion did it state that service could properly be made on a "servant" who does not live in the home and thus is not a part of the "household." In the absence of clearer indication from the Illinois courts, the Court will not reach a conclusion that may drastically expand the body of persons who may accept service under Illinois law.

Plaintiff also argues that even if service was not technically proper, default judgment should still be entered because there is no dispute that Defendants were aware of the lawsuit from the outset. Reply at 7. Plaintiff cites to *Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 56 (3d Cir. 1986) (quoting *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)), for the proposition that "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." But the very next sentence provides as follows: "But the rules are there to be followed, and plain requirements for the means of effecting service may not be ignored." *Id.* Here, the relevant provisions of Federal, New Jersey, and Illinois law all plainly require that service be made on an individual who lives in the defendant's home (or, under Illinois law, is a member of the defendant's

family). Again, Plaintiff has not established this required fact.

Defendants cross-move to vacate the Clerk of the Court's entry of default. The decision to set aside an entry of default is left to the district court's discretion. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). The Third Circuit generally disfavors default, preferring decisions on the merits. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). "[D]oubtful cases [are] to be resolved in favor of the party moving to set aside" the default or default judgment. *$55,518.05 in U.S. Currency*, 728 F.2d at 194-95 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)). "The court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). Ordinarily, in deciding whether to set aside an entry of default, the Court must consider "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Accurate Abstracts, LLC v. Havas Edge, LLC*, No. 14-1994, 2016 WL 7115894, at *1 (D.N.J. Apr. 21, 2016) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)). Weighing these factors is unnecessary, however, where the entry of default is "based on the improper service of the summons and complaint." *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 603 n.3 (D.N.J. 2003) (finding "sufficient 'good cause' exist[ed] for setting aside the default" where there was "no proper service of the summons and complaint"); *see also Gold Kist*, 756 F.2d at 19 ("[B]ecause there is no evidence that the complaint was properly served, the default and the default judgment were improperly entered."); *Witzke v. Ferguson*, 795 F. App'x 120, 122 (3d Cir. 2020) (finding that the "District Court did not abuse its discretion in vacating the entry of default" where service was improper); *Smalls v. Buckalew Frizzell & Crevina LLP*, No. 13-4637, 2014 WL 2889645, at *1 (D.N.J. June 25, 2014) ("Federal Rule of Civil Procedure 55(c) authorizes

the Court to set aside an entry of default for good cause. Clearly, failure to effect proper service constitutes good cause."). Because, as explained above, Plaintiff has not carried its burden of demonstrating that service was proper, the motion to vacate the Clerk of the Court's entry of default is granted.[7]

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion for default judgment is **DENIED** and Defendants' cross-motion to vacate the Clerk of the Court's entry of default is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: November 30th, 2022

                                                                                     John Michael Vazquez, U.S.D.J.

---

[7] The Court also notes that Defendants' counsel has represented his willingness to accept service of the Complaint on behalf of Defendants. Opp. at 2 n.1. Thus, the Court expects that the matter will soon proceed on the merits expeditiously, as is preferred in this Circuit. *See Farnese*, 687 F.2d at 764.